UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM F. SOLFISBURG, <br><br> Plaintiff, <br><br> v. <br><br> GLENCO, INC., DAVID BILLINGSLY, P.E., PFS CORPORATION D/B/A PFS TECO, SET CONNECTORS, INC., APEX HOMES OF PA, LLC, and APEX HOMES, INC., <br><br> Defendants. | Civil Action No. 18-cv-10266-IT |

MEMORANDUM & ORDER

September 30, 2019

TALWANI, D.J.

Before the court is Defendant Apex Homes of PA, LLC's ("Apex LLC") Motion to Dismiss Plaintiff's Second Amended Complaint [#45]. Apex LLC argues that the Second Amended Complaint [#43] ("Complaint") must be dismissed in whole or in part on the grounds: (1) that the Complaint fails to state a claim for successor liability; (2) that paragraph three of the Complaint violates the Federal Rules of Civil Procedure's pleading requirements; (3) that the Complaint fails to join a necessary and indispensable party; and (4) that Plaintiff's claims, with the exception of the claim for breach of warranty, must be dismissed because they are barred by order of the United States Bankruptcy Court for the Middle District of Pennsylvania, the Massachusetts statute of limitations, the Massachusetts "gist of the action" doctrine, and the Massachusetts economic loss doctrine. The court finds that dismissal is not appropriate on any of the grounds presented by Defendant. The motion is, accordingly, DENIED.

I.   **Factual Background**

This action arises out of Plaintiff William F. Solfisburg's purchase and installation of a modular home. Plaintiff alleges that he contracted with a general contractor, Sandcastle Group, in August 2012 to build the home. Compl. ¶ 22. Sandcastle hired various other entities to design, install and perform work on the home. Compl. ¶¶ 17-21. Defendant Apex Homes, Inc. ("Apex Inc.") contracted to build the modular units. Compl. ¶ 25.

Massachusetts State Building Code (the "Special Regulations") require that entities can sell modular homes or building components in the Commonwealth only if they have been approved and certified under these regulations which are administered by the Massachusetts Board of Building Regulations and Standards ("BBRS"). Compl. ¶¶ 11-12. At the time Apex Inc. contracted to build the modular units, it was in Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Middle District of Pennsylvania (the "bankruptcy court"). Def.'s Mem., Exh. E [#46-5]. Apex Inc. did not notify the BBRS that of the bankruptcy proceeding or of changes in officers or ownership as a result of the bankruptcy. Compl. ¶ 25.

The modular unit had structural defects and did not meet the Special Regulations' standards. Compl. ¶¶ 28, 31. Nonetheless, on March 19, 2013, Apex Inc. provided Plaintiff with a signed Certificate of Completion that misrepresented the work done by Apex Inc. Compl. ¶¶ 30-31. The units were delivered to the project site in March 2013. Compl. ¶ 34.

In May 2014, Apex Inc.'s assets, including customer lists, the name "Apex Homes," rights to Apex Inc.'s promotional material, machinery, equipment, inventory, goodwill, licenses, permits, approvals, and intellectual property were purchased by H. Lynn Kuhns, Apex Inc.'s president, on behalf of Ridgeview Modular Housing Group ("Ridgeview"), a Pennsylvania Limited Partnership. See Def.'s Mem., Exh. F ¶ 1.1 [#46-6] ("Asset Purchase Agreement"). The

Asset Purchase Agreement provided further that the "Purchaser shall assume responsibility for all obligations of [Apex Inc.] relating to any warranty extended to [Apex Inc.'s] customers and their assignees in existence as of the Closing Date and shall indemnify and hold [Apex Inc.] harmless from any loss, judgment, liability, claim, or cost, whether contingent, liquidated or unliquidated with respect to such assumed warranty." Id. ¶ 1.3(d). After providing notice to creditors in the Chapter 11 case, the bankruptcy court on July 18, 2014, approved the Asset Purchase Agreement, and included the following provision in its Order Approving Sale ("Sale Order"):

> [Apex Inc.'s] interest in the Purchase Assets is not subject to any known judgments, liens, encumbrances and other claims (collectively, the "Liens and Claims") that have not been avoided or are avoidable in whole, or in part, as part of this Chapter 11 case. All persons or entities holding any Liens and Claims in, to or against [Apex Inc.] or the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any such Liens and Claims against [the purchaser or its successors].

Def.'s Mem., Exh. G ¶ 5 [#46-7].

Five days later, on July 23, 2014, H. Lynn Kuhns created Apex LLC. See Def.'s Mem., Exh. D [#46-4]. Ridgeview then sold the assets purchased from Apex Inc. to Apex LLC. See Request for Stay 2 n.1 [#17]. Mr. Kuhns now operates Apex LLC. Compl. ¶ 3(d). Although Apex LLC was not created until 2014, its website traces its business back to 1989, the year Apex Inc. was founded. Compl. ¶ 3(c).

In or around February 2015, the interior of Mr. Solfisburg's home suffered significant damage after water penetrated the roof. Compl. ¶ 38. Plaintiff retained an engineer to perform an inspection of home and prepare a report documenting discrepancies between the as-built conditions and the specified designs as well as any other sub-standard condition at the home. Id.

This report identified numerous defects, including structural and safety issues. Id.; Compl., Exh. A, 5-63 [#43-1].

Apex LLC subsequently stated to the BBRS that Apex LLC was responsible for the home manufactured by Apex Inc. Compl. ¶ 3(a)-(b).

As of August 2018, when the Complaint was filed, a permanent certificate of occupancy for the home has not issued and Plaintiff continues to be unable to live in the home. Compl. ¶ 48.

## II. Procedural Background

Plaintiff initiated this action on February 9, 2018, and filed his Second Amended Complaint [#43] on August 29, 2018. As detailed further below, Plaintiff alleges that Defendant Apex LLC is the successor to, and responsible and liable for the conduct of, Apex Inc. Although Apex Inc. reportedly has been served with the Summons and operative Complaint, see Affidavit of Service [#52], and despite the court extending the deadline for Apex Inc.'s Answer to August 15, 2019, see Elec. Order [#79] adopting Proposed Second Amended Scheduling Order [#78], Apex Inc. has not answered. Apex LLC responded with the pending Motion to Dismiss [#45] which Plaintiff opposed. See Pl's Opp'n [#64].

## III. Discussion

To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the First Circuit has explained, in reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (internal citations omitted). The plausible factual allegations, taken as true, must ultimately be able to

support the legal conclusion that underlies each claim for relief. Id. Although the court ordinarily only considers the complaint's plausible factual allegations on a motion to dismiss, the First Circuit has recognized a narrow exception to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 74 (1st Cir. 2014). The court now addresses each of Defendant's assertions for why dismissal is proper under these standards.

1. Statute of Limitations

Defendant argues that dismissal is proper for all but the breach of warranty claim under Massachusetts' three-year statute of limitations for tort claims and four-year statute of limitations for the ch. 93A claim. Def.'s Mem. 16-19 [#46]. Defendant states that the modular units were delivered to Sandcastle by March 2013 and had obvious defects at that time. Id. at 17, 18. Thus, Defendant argues, by March 2013, Plaintiff "knew or should have known of the facts underlying" his claims and thus his 2018 Complaint is time-barred Id. at 19.

Under Massachusetts law, "the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [the plaintiff's] injury." Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990). Judgment on the pleadings based on the statute of limitations is appropriate when the pleadings, construed in the light most flattering to the non-moving party, leave no plausible basis for believing that the challenged claim is timely. Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 (1st Cir. 2011).

The facts, as pleaded, plausibly aver that Plaintiff did not become aware of the issues

5

with the construction of the modular units until either late February 2015 or July 2015.[1] Compl. ¶ 38. This suit was filed on February 9, 2018, less than three years later. Accordingly, dismissal of the Complaint on the pleadings as time barred is improper.

    2. "Gist of the Action" Doctrine

Defendant contends that all counts except breach of warranty should be dismissed because the tort claims brought against Apex LLC are a disguised breach of contract claim against Sandcastle. Def.'s Mem. 19-22 [#46]. Defendant states that in cases like these, the court should "look through Plaintiff's legal labels and conclusions to the 'gist of the action' as pleaded against Apex LLC and others" and conclude that this is an "ordinary breach of contract claim against Sandcastle." Id. at 19. Defendant further states that the only duty that existed as to Plaintiff was a duty under the contract between Mr. Solfisburg and Sandcastle and that Plaintiff has failed to show that "any duty was offered, accepted, or otherwise created which would give rise to Apex Inc., let alone Apex LLC's liability in tort." Id. at 21.

As an initial matter, the court finds no support for Defendant's allegation that Apex Inc. did not owe a duty of care to Mr. Solfisburg in the absence of privity between the two for the modules Apex Inc. constructed for Mr. Solfisburg's house. The Massachusetts Supreme Judicial Court ("SJC") addressed this very question in McDonough v. Whalen: "a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the

---

[1] Significant interior damage resulting from ice and snow accumulation occurred "in or about late February 2015." Compl. ¶ 38. Plaintiff had an engineer identify the cause of the interior damage in July 2015. Id.

injuries or damage occurred." 365 Mass. 506, 512 (1974). Further, the Court in McDonough explicitly noted that there was no distinction to be drawn between the duties owed by a contractor versus a subcontractor, noting: "we see no reason to distinguish between [a contractor] and a subcontractor responsible for only one aspect or part of the construction. The duty of care owed by the latter with respect to his particular work is not altered by the fact that someone else is responsible for the construction as a whole." McDonough, 365 Mass. at 512 n.7; see also Conners v. Ne. Hosp. Corp., 439 Mass. 469, 480 (2003) (finding, even in the absence of privity, the following statement of law legally adequate: "each of the subcontractors had a duty to use reasonable care in the performance of his duties and an obligation to perform the duties in a diligent and workmanlike manner") (internal citations omitted).[2]

Defendant's argument that the "gist of action" doctrine precludes Plaintiff's tort claims because the action is more appropriately brought as a breach of contract claim against Sandcastle is similarly unconvincing. The "gist of the action" doctrine is typically applied when resolving whether general principles of contract or tort law apply to a claim that conceivably can be grounded in either. Indeed, each case cited by Defendant, see Def.'s Mem. 19 [#46], involved this application of the doctrine. See McStowe v. Bornstein, 377 Mass. 804, 806 (1979) (evaluating whether a claim of legal malpractice sounded in tort or contract for determining whether the claim could be brought against the attorney's estate); Robinson-Simmons v. Hall, 41

---

[2] The absence of privity between Apex Inc. and Mr. Solfisburg also does not preclude plaintiff's relief under ch. 93A or a theory of negligent misrepresentation. See Chestnut Hill Dev. Corp. v. Otis Elevator Co., 653 F. Supp. 927, 933 (D. Mass. 1987) ("There is . . . no requirement that parties be in privity before their actions come within the regulatory ambit of M.G.L. c. 93A § 2"); Rand v. Cullinet Software, Inc., 847 F. Supp. 200, 214 (D. Mass. 1994) (noting that in the absence of privity, plaintiffs can recover for negligent misrepresentation if a defendant had "actual knowledge of any purported reliance" on its statements).

N.E.3d 331 (Mass. App. Ct. 2015) (concluding that the gist of action was a tort and thus was barred by the statute of limitations); Hendrickson v. Sears, 365 Mass. 83, 86 (1974) (noting, in dicta, that the "traditional view of an action for damages resulting from the negligence of an attorney is that the gist of the action, regardless of its form, is the attorney's breach of contract, and that the cause of action therefore accrues at the time of the breach"); Fall River Sav. Bank v. Callahan, 463 N.E.2d 555, 560 (Mass. App. Ct. 1984) (noting that because the "gist of an action for damages resulting from the negligence of an attorney, however, regardless of its form, is the attorney's breach of contract" plaintiff did not need to establish damages). None of the cases cited stand for the proposition that the court should weigh whether this action is more appropriately labelled a breach of contract action against Sandcastle or an action in tort against Apex LLC and then bar suit against the other Defendant. Nor can the court identify any precedent that supports that proposition.

Even then, Defendant's claim that this action sounds in contract and not in tort is against the weight of the law and the facts. The SJC has addressed cases where a violation of a contractual duty should be properly considered a tort:

> When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it. Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort.

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 395–96 (2003) (internal citations omitted). Here, the Plaintiff does not allege a failure to perform, but incompetent performance that resulted in a product that was not built with reasonably appropriate care and skill. Compl. ¶ 50. Accordingly, Defendant's claim that this action should be dismissed pursuant to the Massachusetts "gist of the action" doctrine is misplaced.

8

3. Economic Loss Doctrine

Defendant also moves for dismissal of all but Plaintiff's breach of warranty claim on the grounds that they are barred by Massachusetts' economic loss doctrine. In Massachusetts, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." FMR Corp. v. Bos. Edison Co., 415 Mass. 393, 395 (1993). Massachusetts courts have extended the economic loss doctrine "not only to the purchase and sale of products but also to claims of negligent design and installation in a newly constructed home." Berish v. Bornstein, 437 Mass. 252, 267 (2002). When applying the economic loss doctrine to cases involving defects in new construction, the SJC considers whether, taking the allegations as true, "it is reasonable to infer that the enumerated 'defects and deficiencies' [in the new construction] caused property damage beyond the defects . . . themselves." Id. at 268. If not, judgment on the pleadings is appropriate. Id.

Plaintiff's Complaint meets this bar. See Compl. ¶ 38 ("[i]n or about late February 2015, ice and snow accumulation caused water to penetrate the roof of the Home and *cause significant damage to the interior of the Home*") (emphasis added). Accordingly, the economic loss doctrine does not preclude Plaintiff from proceeding on this action against Apex LLC.

4. Failure to Join a Required and Indispensable Party

Defendant also moves for dismissal on the grounds that Plaintiff has failed to join Sandcastle in this suit. Def.'s Mem. 9 [#46]. Sandcastle is the contractor that directly contracted with Plaintiff for the construction of the house and subcontracted with Apex Inc. and the other Defendants for the design, manufacture, installation, and inspection of the house. Compl. ¶ 22. Apex LLC argues that Sandcastle is a necessary party under Fed. R. Civ. P. 19(a) ("Rule 19"), that it is not feasible to join Sandcastle in this suit, and that Sandcastle is indispensable to the

present litigation under Rule 19(b). Def.'s Mem. 9-15 [#46]. Defendant concludes that the petition must be dismissed.

Rule 19(a)(2) instructs the court to join necessary absent parties into the proceeding if the absent party has an interest in the action and it is feasible to do so. Rule 19(a)(1)(B) describes two ways in which an absent party may be necessary: (i), if the litigation would impair or impede the absent party's ability to protect its interests; and (ii), if the party's absence would leave defendants subject to multiple or inconsistent obligations.[3] See also Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008) (describing this rule).

Apex LLC's argument focuses on Sandcastle's interests, pursuant to Rule 19(a)(1)(B)(i), as the basis for why Sandcastle is necessary to this proceeding. Apex LLC argues that since Sandcastle was the general contractor on this project, it is the "common thread linking the parties together" and is thus necessary to this action. Def.'s Mem. 11 [#46]. In support, Defendant cites cases holding that contracting parties are "the paradigm of an indispensable party." Id. at 10 (citing, inter alia, HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc., No. 08-81040-CIV, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010)).

The court is not persuaded by Defendant's assertion that parties to a contract are

---

[3] Rule 19(a)(1)(A) provides a third instance where an absent party should be deemed a necessary party: if complete relief cannot be afforded among the parties to the suit without joining the absent party. Defendant does not address this provision of the rule and so it is only briefly considered here. The rule applies when a party's absence "would preclude the district court from being able to fashion meaningful relief *as between the parties*." Bacardi Int'l Ltd. v. V. Suarez & Co., 719 F.3d 1, 10 (1st Cir. 2013) (citing Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir.1983)). Sandcastle's absence here does not preclude Plaintiff from obtaining the relief he requests in the Complaint if he were to prevail. See also J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 504 (D. Mass. 2015) (applying Bacardi to hold "that an existing party may pursue or be subject to further litigation against other absent parties has no effect on the analysis under Rule 19(a)(1)(A)").

necessary parties for the very fact that they are signatories to the contract. The sentence subsequent to the cited sentence in HDR Eng'g is instructive: "Parties to a contract are indispensable when a suit *concerns the rights and obligations afforded by the contract*." 2010 WL 2402908, at *2 (emphasis added). See also United States v. San Juan Bay Marina, 239 F.3d 400, 406 (1st Cir. 2001) (a party is necessary under Rule 19 (a)(1)(B)(i) only if it claims a "legally protected interest" relating to the subject matter of the action).

The suit here does not affect Sandcastle's rights and obligations under the contract and only relate to Apex Inc. and others' alleged tortious conduct. To resolve whether Defendants before the court tortiously harmed Plaintiff, the court does not need to impair or impede any rights Sandcastle might have under the contract. Accordingly, Rule 19 (a)(1)(B)(i) is not implicated by this proceeding.

Defendant further argues that resolving the tort action may implicate Sandcastle's interests because "without [Sandcastle] in the case, there may not be much opposition to theories of causation that shift the blame away from [Apex Inc.] and onto [Sandcastle]." Def.'s Mem. 11-12 [#46] (citing Scottsdale Ins. Co. v. Bridges, LLC, No. 08-cv-11033-GAO, 2009 WL 799467, at *3 (D. Mass. Mar. 25, 2009). Defendant's Memorandum 13-14 [#46] points to the First Circuit's decision in Picciotto, which held that an absent party was necessary because an adverse judgment, even if not preclusive, could be "persuasive precedent in a subsequent proceeding and would weaken the absent party's bargaining position for settlement purposes." Picciotto, 512 F.3d at 16.[4] Apex LLC argues that since Sandcastle will not be in court to protect itself, the

---

[4] Defendant raises Picciotto in the "indispensable party" analysis under Rule 19(b), not the "necessary party" analysis under Rule 19(a). See Def.'s Mem. 14 [#46]. However, Picciotto is relevant for Rule 19(a) and, because the court does not reach Rule 19(b), it is discussed here.

resolution of this action may affect its legal interests.

However, both Scottsdale Ins. Co. and Picciotto involve facts very different than the facts here. In both cases, the absent parties were knee-deep in the litigation but could not be parties in the federal court action due to jurisdictional defects and objected to the parallel federal case proceeding without them. Scottsdale Ins. Co., 2009 WL 799467, at *3; Picciotto, 512 F.3d at 18-19; see Reply Brief for the Commonwealth, Scottsdale Ins. Co., supra, at 2-6 (Oct. 2, 2008), ECF No. 22. In each case, the absent parties made a persuasive showing of how their absence in the federal action could jeopardize their rights in the state court action and requested that the case proceed in an omnibus state court proceeding.

Here, without parallel state court litigation involving Sandcastle and no interest in litigation here on the part of Sandcastle, Apex LLC's concerns about Sandcastle's rights being affected by this proceeding ring hollow. See Bacardi Int'l Ltd. v. V. Suarez & Co., 719 F.3d 1, 12 (1st Cir. 2013) (holding that the analysis in Picciotto was not applicable where the absent party did not file an affidavit with the district court or provide some notice that its interests would be impaired by the litigation proceeding without her).

Defendant's Memorandum also briefly mentions prejudice Apex LLC may experience as a result of Sandcastle's absence. See Def.'s Mem. 13 [#46] ("any judgment rendered in the absence of the Sandcastle / Townsend could significantly prejudice . . . Defendants, including Apex LLC"). The prejudice Apex LLC is referring to is not evident from Defendant's brief. Regardless, to the extent that a necessary party is defined based on harm to an existing defendant, the court looks to Rule 19(a)(1)(B)(ii) which states that a party is necessary if their absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Conceivably, Apex LLC may be concerned that without

12

Sandcastle joined in this action it may face a separate suit by Sandcastle for breach of contract, resulting in "multiple obligations." However, as the First Circuit explained in Delgado v. Plaza Las Americas, Inc., this rule is *not* to be used simply to avert multiple litigations that arise from the same incident in different forums. 139 F.3d 1, 3 (1st Cir. 1998) ("Where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages").

     5. Successor Liability

Defendant argues that, to the extent that the Complaint attempts to claim successor liability, it runs afoul of the Federal Rules of Civil Procedure. Specifically, Defendant contends that paragraph three of the Complaint is improper because the successor liability action "should be a separate count in the complaint" and not pleaded "as an afterthought in its introductory section as part of its identification of the parties." Def.'s Mem. 9 [#46]. As a result, Defendant contends that dismissal is appropriate. Id.

To hold Apex LLC liable in Massachusetts as a successor to Apex Inc. under theories of "de facto merger" or "mere continuation" of the predecessor, Plaintiff must demonstrate that: (1) Apex LLC expressly or impliedly assumed liability of Apex Inc., (2) the transaction is a de facto merger or consolidation, (3) Apex LLC is a mere continuation of Apex Inc., or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 556 (2008).

Defendant states that "plaintiff makes no attempt to allege the facts necessary to meet the applicable legal standard" for successor liability. Def.'s Mem. 7 [#46]. To the contrary, the Complaint contains facts that, if true, could support successor liability under the first and third

13

grounds.

First, Plaintiff alleges that Apex LLC made representations that it assumed responsibilities for the homes built by Apex Inc. Compl. ¶¶ 3(a), 3(b), and 46.[5]

Second, Plaintiff provides numerous allegations that, if true, support the conclusion that Apex LLC is a "mere continuation" of Apex Inc. A successor is a mere continuation of a predecessor when there is a "reorganization transforming a single company from one corporate entity into another." Milliken & Co., 451 Mass. 547 at 557. "[T]he indices of a 'continuation' are, at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets." McCarthy v. Litton Indus., Inc., 410 Mass. 15, 23 (1991). Here, Apex LLC holds itself out to the public—and to Mr. Solfisburg and the BBRS—as a single entity dating back to the beginning of Apex Inc. Compl. ¶¶ 3(a), 3(b), and 3(c). Furthermore, Apex LLC is operated by the same person that was the president of Apex Inc. Compl. ¶ 3(d).

These factual allegations in support of successor liability are sufficient to provide Apex LLC with "fair notice" that Plaintiff is claiming that Apex LLC is responsible, under the theory of successor liability, for the wrongdoing of Apex Inc. and "the grounds upon which it rests." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). The factual allegations in support of successor liability are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, to the extent that Apex LLC objects to the formatting of paragraph three of the Complaint, the court finds no substantive error. Accordingly, Plaintiff's claim of

---

[5] These statements are consistent with the Asset Purchase Agreement (on which Defendant relies for the next argument). The Asset Purchase Agreement provides that the purchaser assumed existing warranty obligations Def.'s Mem., Exh. F ¶ 1.3(d) [#46-6].

successor liability has been sufficiently pleaded.

      6. <u>Plaintiff's Ability to Sue Apex LLC for the Wrongs of Apex Inc.</u>

Defendant Apex LLC argues that even if Plaintiff had stated a claim under the Massachusetts successor liability doctrine, no claim lies here because Apex LLC bought Apex Inc.'s assets out of bankruptcy "free and clear" of any outstanding obligations.

The United States Bankruptcy Code provides that bankruptcy courts *may* grant sales of Debtors' assets that are free and clear of pre-existing "interests." 11 U.S.C. § 363(f). Courts often construe what constitutes an "interest" liberally so as to include successor liability claims. <u>See</u> <u>In re PBBPC, Inc.</u>, 484 B.R. 860, 867 (B.A.P. 1st Cir. 2013) (reviewing cases and noting the absence of binding First Circuit precedent); <u>see also</u> Chelsea Donenfeld, <u>Successor Liability in the Bankruptcy Court: The Problem or the Solution?</u>, 39 Cardozo L. Rev. 719, 735 (2017). The few circuit courts that have addressed this issue have come to different conclusions. <u>See</u> Donenfeld, <u>Successor Liability</u>, <u>supra</u> at 732 (reviewing the circuit split).

However, it is not apparent that the bankruptcy court here did exercise its authority to sell Apex Inc.'s assets free and clear of any successor liability claims. The "Liens and Claims" discharged in the <u>Sale Order</u> [#46-7] is a defined term that references "known judgments, liens, encumbrances and other claims," that is, those identified in the bankruptcy proceeding. Here, there is no suggestion that a claim was made by Mr. Solfisburg against Apex Inc. in the bankruptcy proceeding.

Moreover, while the First Circuit has not specifically addressed whether "interests" that may be extinguished under § 363(f) of the Bankruptcy code can include successor liability claims, it has held that any extinguishment under the authority of the Bankruptcy code is subject to fundamental notions of procedural due process. <u>In re Savage Indus., Inc.</u>, 43 F.3d 714, 721

15

(1st Cir. 1994). In Savage, the First Circuit addressed a case where a person was tortiously injured by a company's product shortly *before* an asset transfer agreement was executed with "free and clear" language similar to that used here. Id. at 717. The First Circuit held that a successor liability claim against the purchasing company was not discharged, despite the bankruptcy court's order pursuant to § 363(f), because the injured plaintiff had not been provided with notice and an opportunity to be heard before the bankruptcy court's sale order discharging the claim was entered. Id. at 721.

Here, the Complaint states that Apex Inc. and Apex LLC did not reveal any change in officers or ownership to the BBRS, Compl. ¶ 25, and Apex LLC does not give any indication that Apex Inc. identified Plaintiff's claim in the bankruptcy proceeding or otherwise gave Plaintiff any notice or opportunity to be heard before the bankruptcy court's order was entered. As alleged, no due process was afforded to Plaintiff before the Sale Order [#46-7] was entered. Accordingly, even if the Sale Order could be construed to discharge the successor liability claim, the claim would not be barred due to insufficient process.

## IV. Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [#45] is DENIED on all counts.


IT IS SO ORDERED.

September 30, 2019 /s/ Indira Talwani
United States District Judge